USA CASH #1, INC v CITY OF SAGINAW

Docket No. 279378. Submitted December 2, 2008, at Lansing. Decided
July 30, 2009, at 9:15 a.m.

USA Cash #1, Inc., and Stretch-A-Buck Discount, licensed second-
hand merchants operating in the city of Saginaw, brought an
action in the Saginaw Circuit Court against the city, alleging that
the city's ordinance regulating secondhand merchants' reporting
of transactions to local law enforcement is preempted by the
secondhand and junk dealers act, MCL 445.401 *et seq.*, that the
ordinance denies secondhand merchants equal protection under
the law, and that the ordinance imposes an unlawful tax on
secondhand merchants. The court, Robert L. Kaczmarek, J.,
granted summary disposition for the city. Stretch-A-Buck ap-
pealed.

The Court of Appeals *held*:

1. The city ordinance's electronic reporting requirements
are additional to the requirements of the state secondhand and
junk dealers act and do not conflict with the state act. Although
the city ordinance contains more specific regulations than the
state law regulating the same area, the laws are not contradic-
tory in the sense that they cannot coexist and be effective. The
same rationale applies to the provisions of the city's ordinance
requiring secondhand merchants to report transactions to local
law enforcement within 48 hours of the transaction and pay a
fee of $2 for each transaction. The city's requirement that
secondhand merchants report transactions within 48 hours does
not directly conflict with the state statute's weekly reporting
requirements. The laws can coexist and be effective. The
transaction fee imposed by the city ordinance is additional to
the requirements of MCL 445.405, which do not impose a fee on
each transaction, and creates no conflict therewith. The trial
court properly held that both acts may coexist.

2. The city ordinance does not deny secondhand merchants
equal protection. A rational basis exists for subjecting secondhand
merchants, but not nonprofit organizations such as Goodwill
Industries International, Inc., and the Salvation Army, to the
requirements of the ordinance.

3. The transaction fee is a user fee, not a tax, because the fee is voluntary, in that businesses are subject to the fee only if they engage in a certain number of transactions within a certain period, the ordinance serves a regulatory purpose, and the fee is proportional to the benefit conferred.

Affirmed.

1. STATUTES — MUNICIPAL CORPORATIONS — ORDINANCES — PREEMPTION.

A state statute preempts regulation by a municipal corporation when the local regulation directly conflicts with the statute or the statute completely occupies the regulatory field; a direct conflict exists when the local regulation permits what the statute prohibits or prohibits what the statute permits; a local regulation that regulates in an area where a state statute also regulates, with mere differences in details, is not rendered invalid due to conflict because, generally, regulation additional to that of a state law does not constitute a conflict with the state law.

2. STATUTES — MUNICIPAL CORPORATIONS — ORDINANCES — PREEMPTION.

The mere fact that the state, in the exercise of the police power, has imposed certain regulations does not prohibit a municipality from exacting additional requirements as long as there is no conflict between the two and the state statute does not provide that only its regulations apply; unless legislative provisions are contradictory in the sense that they cannot coexist, they are not deemed inconsistent because of mere lack of uniformity in detail.

3. TAXATION — USER FEES — TAXES.

There are three primary criteria to be considered when distinguishing between a user fee and a tax although there is no bright-line distinction between a valid user fee and a tax: first, a user fee must serve a regulatory purpose rather than a revenue-raising purpose, although a user fee may also be used to raise money as long as it is in support of the underlying regulatory purpose; second, a user fee must be proportionate to the necessary costs of the service rendered or the benefit conferred; and, third, the fee must be voluntary in nature, meaning that the payer of the fee must be able to refuse or limit its use of the service or benefit; the three criteria must be considered in their totality rather than in isolation.

*Smith Bovill, P.C.* (by *Andrew D. Concannon*), for Stretch-A-Buck Discount.

*Thomas H. Fancher* for the city of Saginaw.

Before: SAAD, C.J., and FITZGERALD and BECKERING, JJ.

PER CURIAM. Plaintiff Stretch-A-Buck Discount appeals as of right the trial court's orders denying its motions for summary disposition and granting defendant city of Saginaw's motion for summary disposition. The trial court upheld a city ordinance regulating secondhand merchants' reporting of transactions to local law enforcement. We affirm.

### I. FACTS AND PROCEDURAL HISTORY

On June 19, 2006, the city of Saginaw enacted an ordinance, Saginaw Ordinances, title XI, § 110.25, requiring secondhand merchants to electronically report transactions in which the merchants received secondhand or used personal property to the chief of police within 48 hours of the transaction and pay a fee of $2 for each transaction. The ordinance required the merchants to electronically report transactions beginning August 1, 2006. Stretch-A-Buck and plaintiff USA Cash #1, Inc. (USA Cash), both licensed secondhand merchants in the city of Saginaw, initiated this action alleging that the ordinance is preempted by the secondhand and junk dealers act, MCL 445.401 *et seq.*, and the pawnbroker act, MCL 445.471 *et seq.*, denies secondhand merchants equal protection under the law, and imposes an unlawful tax on secondhand merchants.

Stretch-A-Buck and USA Cash moved for partial summary disposition pursuant to MCR 2.116(C)(9) and (10) on their claim that the ordinance is preempted by state law. In an opinion and order dated January 5, 2007, the trial court denied the motion, finding that the ordinance does not directly conflict with state law.

Thereafter, the city of Saginaw moved for summary disposition pursuant to MCR 2.116(C)(8) and (10), asserting that the ordinance is rationally related to a legitimate governmental interest and thus does not deny secondhand merchants equal protection, and that the transaction fee imposed by the ordinance is a valid user fee. Stretch-A-Buck and USA Cash then filed a motion for summary disposition pursuant to MCR 2.116(C)(8), (9), and (10) on their equal protection and unlawful taxation claims. In an opinion and order dated June 28, 2007, the trial court granted summary disposition in favor of the city of Saginaw pursuant to MCR 2.116(C)(10). The court reiterated its prior finding that the ordinance is not preempted by state law and additionally found that the ordinance does not deny secondhand merchants equal protection or impose an unlawful tax. Stretch-A-Buck now appeals as of right.

## II. STANDARDS OF REVIEW

A grant or denial of summary disposition is reviewed de novo to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone. *Maiden, supra* at 119. The motion should be granted only when the claim is so legally deficient that recovery would be impossible even if all well-pleaded factual allegations were true and viewed in the light most favorable to the nonmoving party. *Id*. Likewise, a motion under MCR 2.116(C)(9) tests the legal sufficiency of a defense by the pleadings alone. *Slater v Ann Arbor Pub Schools Bd of Ed*, 250 Mich App 419, 425; 648 NW2d 205 (2002). All well-pleaded factual allegations are accepted as true, and summary disposition is appropriate only "when the defendant's plead-

ings are so clearly untenable that as a matter of law no factual development could possibly deny the plaintiff's right to recovery." *Id.* at 425-426. A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Maiden, supra* at 120. All admissible evidence submitted by the parties is reviewed in the light most favorable to the nonmoving party and summary disposition is appropriate only when the evidence fails to establish a genuine issue regarding any material fact. *Id.*; MCR 2.116(G)(6).

### III. PREEMPTION

Stretch-A-Buck first argues that the city of Saginaw's ordinance directly conflicts with the secondhand and junk dealers act, specifically MCL 445.404 and 445.405, and is therefore preempted by state law.[1] According to Stretch-A-Buck, the ordinance is preempted to the extent it requires secondhand merchants to electronically report transactions, report transactions within 48 hours, and pay a fee of $2 for each transaction. We disagree.

### A. STATUTORY INTERPRETATION

As this Court stated in *USAA Ins Co v Houston Gen Ins Co*, 220 Mich App 386, 389-390; 559 NW2d 98 (1996):

> Statutory interpretation is a question of law subject to review de novo on appeal. The primary goal of statutory interpretation is to ascertain and give effect to the intent of the Legislature in enacting a provision. Statutory language should be construed reasonably, keeping in mind the pur-

---

[1] Stretch-A-Buck concedes that the pawnbroker act was repealed by 2006 PA 675, effective March 30, 2007, rendering all of Stretch-A-Buck's arguments predicated on the act moot.

> pose of the statute. The first criterion in determining intent is the specific language of the statute. If the statutory language is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written. However, if reasonable minds can differ regarding the meaning of a statute, judicial construction is appropriate. [Citations omitted.]

Every word or phrase of a statute should be accorded its plain and ordinary meaning, but if the Legislature's intent cannot be determined from the statute itself, this Court may consult dictionary definitions. *Haynes v Neshewat*, 477 Mich 29, 36; 729 NW2d 488 (2007).

A state statute preempts regulation by an inferior government when the local regulation directly conflicts with the statute or when the statute completely occupies the regulatory field. *McNeil v Charlevoix Co*, 275 Mich App 686, 697; 741 NW2d 27 (2007), citing *Rental Prop Owners Ass'n of Kent Co v Grand Rapids*, 455 Mich 246, 257; 566 NW2d 514 (1997). "For purposes of preemption, a direct conflict exists between a local regulation and a state statute when the local regulation permits what the statute prohibits or prohibits what the statute permits." *McNeil, supra* at 697, citing *People v Llewellyn*, 401 Mich 314, 322 n 4; 257 NW2d 902 (1977). It is well established, however, that a local ordinance that regulates in an area where a state statute also regulates, with mere differences in detail, is not rendered invalid due to conflict. *Walsh v River Rouge*, 385 Mich 623, 635-636; 189 NW2d 318 (1971). "As a general rule, additional regulation to that of a State law does not constitute a conflict therewith." *Id.* at 636 (quotation marks and citation omitted). Where no direct conflict exists, both laws stand. *Id.*

In *Rental Prop Owners Ass'n of Kent Co, supra* at 262, and in the cases cited therein, *id.* at 261, our

Supreme Court quoted with approval the following passage from 56 Am Jur 2d, Municipal Corporations, § 374, pp 408-409:

"It has been held that in determining whether the provisions of a municipal ordinance conflict with a statute covering the same subject, the test *is whether the ordinance prohibits an act which the statute permits, or permits an act which the statute prohibits.* Accordingly, it has often been held that a municipality cannot lawfully forbid what the legislature has expressly licensed, authorized, permitted, or required, or authorize what the legislature has expressly forbidden.

\* \* \*

"The mere fact that the state, in the exercise of the police power, has made certain regulations does not prohibit a municipality from exacting additional requirements. So long as there is no conflict between the two, and the requirements of the municipal ordinance are not in themselves pernicious, as being unreasonable or discriminatory, both will stand. *The fact that an ordinance enlarges upon the provisions of a statute by requiring more than the statute requires creates no conflict therewith unless the statute limits the requirement for all cases to its own prescription.* Thus, where both an ordinance and a statute are prohibitory, and the only difference between them is that the ordinance goes further in its prohibition but not counter to the prohibition under the statute, and the municipality does not attempt to authorize by the ordinance what the legislature has forbidden or forbid what the legislature has expressly licensed, authorized, or required, there is nothing contradictory between the provisions of the statute and the ordinance because of which they cannot coexist and be effective. *Unless legislative provisions are contradictory in the sense that they cannot coexist, they are not deemed inconsistent because of mere lack of uniformity in detail.*" [Emphasis in original, final emphasis added.]

### B. THE CITY ORDINANCE

The challenged city ordinance states, in pertinent part:

(D) (1) No person shall fail to keep record of all persons with whom he or she does business and all property coming into his or her possession. All reports must be electronically transmitted to the Chief of Police. Every secondhand merchant, within forty-eight (48) hours, must transmit to the Chief of Police by means of electronic transmission through a modem or similar device in such a format that the data is capable of direct electronic entry into the Saginaw Police Department's computerized system approved by the Chief of Police for identifying secondhand or used personal property, all transactions in which the secondhand merchant received secondhand or used personal property the preceding day by pawn, trade, purchase, or consignment. A transaction reported by electronic transmission under this subsection shall not be reported on paper forms unless the Chief of Police so requests.

\* \* \*

(3) All secondhand merchants must have the equipment installed in their place of business no later than July 31, 2006. The Saginaw Police Department will require all secondhand merchants to electronically submit data beginning August 1, 2006.

(E) (1) A fee of two dollars ($2.00) will be assessed per transaction . . . .

(2) A TRANSACTION is defined as a single buy or which may involve one or more secondhand goods or used personal property and does not include contract extensions or claims. This is a per transaction registration fee, not a per item fee included in the transaction. [Saginaw Ordinances, title XI, § 110.25(D), (E).]

### C. THE STATE LAW

The Michigan Legislature has twice amended the secondhand and junk dealers act since this action was commenced. At the time Stretch-A-Buck and USA Cash

filed their complaint and the parties filed their respective motions for summary disposition, MCL 445.404 and 445.405 read, in part:

> Sec. 4. Such second hand dealer or junk dealer as defined in the preceding section shall . . . *keep a separate book* open to inspection by member of a police force, city marshal, constable or other person, *in which shall be written* in the English language at the time of the purchase or exchange of such articles, a description thereof, the name, description and residence of the person from whom the same was purchased and received, and the day and hour when such purchase or exchange was made. Each entry shall be numbered consecutively, commencing with number 1. [Emphasis added.]

> Sec. 5. Such articles, purchased or exchanged shall be retained by the purchaser thereof, for at least 15 days before disposing of them, in an accessible place in the building where such articles are purchased and received. A tag shall be attached to such articles in some visible and convenient place, with the number written thereupon, to correspond with the entry number in *such book*. Such purchaser *shall prepare and deliver on Monday of each* week to the chief of police or chief police officer of the city in which such business is carried on, *before 12 o'clock noon, a legible and correct copy written in the English language from such book*, containing a description of each article purchased or received during the preceding week, the hour and day when the purchase was made, and the description of the person from whom it was purchased. Such statement shall be verified by the affidavit of the person subscribing his name thereto. This section shall not apply to . . . . [Emphasis added.]

The act was subsequently amended by 2006 PA 675, effective March 30, 2007. Under that version of the act, MCL 445.404 and 445.405 read, in part:

> Sec. 4. (1) A second hand dealer or junk dealer shall post in a conspicuous place in or upon its place of business a sign having its name and occupation.

(2) A second hand or junk dealer *shall keep a separate book or other record* open to inspection by a member of a local law enforcement agency, *in which shall be written or entered* in the English language at the time of the purchase or exchange of any article a description of the article, the name, description, fingerprint, operator's or chauffeur's license or state identification number, registration plate number, and address of the person from whom the article was purchased and received, and the day and hour when the purchase or exchange was made as well as the location from which the item was obtained, if applicable. Each entry shall be numbered consecutively. [Emphasis added.]

Sec. 5. (1) The articles purchased or exchanged shall be retained by the purchaser for at least 15 days before disposing of them, in an accessible place in the building where the articles are purchased and received. A tag shall be attached to the articles in some visible and convenient place, with the number written thereupon, to correspond with the entry number *in the book or other record.*

(2) The purchaser *shall prepare and deliver on Monday of each week* to the chief of police or chief law enforcement officer of the local unit of government in which such business is carried on, *before 12 o'clock noon, a legible and correct copy written in the English language from the book or other record*, containing a description of each article purchased or received during the preceding week, the hour and day when the purchase was made, and the description of the person from whom it was purchased. The statement shall be verified by the person subscribing his or her name thereto. [Emphasis added.]

After the parties filed their briefs on appeal and argued before this Court, the act was amended by 2008 PA 428, effective April 1, 2009. MCL 445.404 and 445.405 now read, in part:

Sec. 4. (1) A second hand dealer or junk dealer shall post in a conspicuous place in or upon its place of business a sign having its name and occupation.

(2) A second hand or junk dealer *shall make and maintain a separate book or other written or electronic record*, numbered consecutively, and open to inspection by a member of a local law enforcement agency and the Michigan state police, *in which shall be written or entered* in the English language at the time of the purchase or exchange of any article a description of the article, and all of the following . . . . [Emphasis added.]

Sec. 5. (1) The articles purchased or exchanged shall be retained by the purchaser for at least 15 days before disposing of them, in an accessible place in the building where the articles are purchased and received. A tag shall be attached to the articles in some visible and convenient place, with the number written thereupon, to correspond with the entry number in *the book or other record.*

(2) The purchaser *shall prepare and deliver on Monday of each week* to the chief of police or chief law enforcement officer of the local unit of government in which that business is carried on, *before 12 noon, a legible and correct paper or electronic copy, in the English language, from the book or other written or electronic record*, containing a description of each article purchased or received during the preceding week, the hour and day when the purchase was made, the description of the person from whom it was purchased, and a copy of the documentation required under section 4 regarding the person from whom it was purchased. The statement shall be verified in a manner acceptable to the chief of police or chief law enforcement officer. [Emphasis added.]

### D. ANALYSIS

As indicated, Stretch-A-Buck argues that the city of Saginaw's ordinance directly conflicts with MCL 445.404 and 445.405 to the extent that the ordinance requires secondhand merchants to electronically report transactions, report transactions within 48 hours, and pay $2 for each transaction. We find no direct conflict.

Both the city ordinance and the state statute at issue require secondhand merchants to report transactions in which the merchants received secondhand or used personal property to local law enforcement. With regard to the form of reporting, the city ordinance requires the merchants to submit the reports "by means of electronic transmission through a modem or similar device in such a format that the data is capable of direct electronic entry into the Saginaw Police Department's computerized system . . . ." Saginaw Ordinances, title XI, § 110.25(D)(1). The ordinance further provides that a "transaction reported by electronic transmission . . . shall not be reported on paper forms unless the Chief of Police so requests." *Id.*

Stretch-A-Buck asserts that the city ordinance is preempted by the secondhand and junk dealers act in that the ordinance "prohibits what the statute permits," *McNeil, supra* at 697, specifically the reporting of transactions on paper forms. At the time this action was commenced, the act required secondhand merchants to "keep a separate book" of transactions "written in the English language," MCL 445.404, and to report the transactions to law enforcement by delivering "a legible and correct copy written in the English language from such book," MCL 445.405. In its January 5, 2007, opinion and order, the trial court ruled that the electronic reporting requirements of the city ordinance did not directly conflict with the secondhand and junk dealers act, stating:

> [T]he secondhand and junk dealers act and the pawnbroker act] are silent as to the form in which [the] report[s] . . . are to be communicated or filed. [The statutes do] not prescribe that the reports be printed on paper, penned onto papyrus, carved into stone tablets, or otherwise set into any particular medium for conveying written information. The only apparent requirement as to the form

of [the] reports is MCL 445.405's provision that the specified information in the weekly report is to be legibly written in the English language. Therefore, the Court finds that no direct conflict exists between the statute[s'] silence and the City's supplemental ordinance indicating that submission of the transaction reports is to be done in electronic form by computer.

We agree with the trial court that the version of the secondhand and junk dealers act in effect at the time of its decision did not specify the form in which the transactions were to be reported to law enforcement.[2] The act only required secondhand merchants to "prepare and deliver . . . a legible and correct copy written in the English language from" its "book" of transactions. MCL 445.405. While the primary definition of the term "book" is "a long written or printed work of fiction or nonfiction usu. on sheets of paper fastened or bound together within covers," *Random House Webster's College Dictionary* (2005), MCL 445.405 only required the merchants to submit "a legible and correct copy" from the book, without specifying whether the copy was to be submitted electronically or on paper. Further, while MCL 445.405 required the copy to be "written in the English language," and the primary definition of the term "write" is "to trace or form (character, letters, words, etc.) esp. on paper, with a pen, pencil, or other instrument or means," a secondary definition of "write" is "to be the author or originator of; compose." *Random House Webster's College Dictionary* (2005). The term "written" is defined as "expressed in writing (disting. from *spoken*)." *Id.* (emphasis in original). Considering the plain language of MCL 445.404 and 445.405, it was

---

[2] When the trial court issued its June 28, 2007, opinion and order reiterating its prior determination that the city ordinance was not preempted by state law, the court made no mention of the March 30, 2007, amendments of MCL 445.404 and 445.405.

reasonable for the trial court to conclude that under the secondhand and junk dealers act, a secondhand merchant could submit an electronic or paper copy of its transactions, as long as the copy was legible, correct, and composed in the English language, rather than any other language.

In the amended versions of MCL 445.404 and 445.405, the Legislature made clear that secondhand merchants are permitted to keep the statutorily required information about their transactions in forms other than paper books, i.e., "sheets of paper fastened or bound together within covers," and to submit copies of the information to law enforcement electronically or on paper. The version of the secondhand and junk dealers act effective on March 30, 2007, required secondhand merchants to "keep a separate book *or other record* . . . in which shall be written *or entered*" the required information, MCL 445.404(2) (emphasis added), and "prepare and deliver . . . a legible and correct copy written in the English language from the book *or other record*" to law enforcement, MCL 445.405(2) (emphasis added). It is reasonable to conclude that by using the terms "other record" and "entered," the Legislature intended to encompass the keeping and submitting of electronic records. The current version of the secondhand and junk dealers act further clarifies this point, requiring secondhand merchants to "make and maintain a separate book *or other written or electronic record* . . . in which shall be written *or entered*" the required information, MCL 445.404(2) (emphasis added), and "prepare and deliver . . . a legible and correct *paper or electronic copy*, in the English language, from the book *or other written or electronic record*," MCL 445.405(2) (emphasis added).

Stretch-A-Buck emphasizes that while the secondhand and junk dealers act may permit secondhand

merchants to electronically report transactions, the city of Saginaw's ordinance *only* permits electronic reporting and prohibits the reporting of transactions on paper forms. Thus, according to Stretch-A-Buck, the city ordinance "prohibits what the statute permits," *McNeil, supra* at 697, and is therefore preempted by state law. We disagree. The city of Saginaw's electronic reporting requirements are additional to the requirements of the secondhand and junk dealers act and do " 'not constitute a conflict therewith.' " *Walsh, supra* at 636 (citation omitted). While the city ordinance contains more specific regulations than the state law regulating the same area, the laws are not contradictory in the sense that they cannot " 'coexist and be effective.' " *Rental Prop Owners Ass'n of Kent Co, supra* at 262 (citation omitted). Cf. *Detroit v Qualls*, 434 Mich 340, 345, 363-364; 454 NW2d 374 (1990) (holding that a city ordinance prohibiting the storage of more than 100 pounds of certain fireworks in a place of retail sales did not conflict with state law regulating the storage of fireworks, but containing no limit on the amount of fireworks a retailer could store).

The same rationale applies to the provisions in the city of Saginaw's ordinance requiring secondhand merchants to report transactions to local law enforcement within 48 hours of the transaction and pay a fee of $2 for each transaction. Stretch-A-Buck argues that the provisions are preempted by state law because MCL 445.405 requires secondhand merchants to report transactions on a weekly basis only and contains no reference to transaction fees. Again, we disagree. The city's requirement that secondhand merchants report transactions within 48 hours does not directly conflict with the state's weekly reporting requirements. The city ordinance simply requires more frequent reporting than the state law. There is no question that the laws can " 'coexist and be effective.' " *Rental Prop Owners*

*Ass'n of Kent Co*, *supra* at 262 (citation omitted). Furthermore, this Court has previously held that locally imposed fees do not conflict with state law regulating the same area merely because the state law imposes no fees. See *John's Corvette Care, Inc v Dearborn*, 204 Mich App 616, 619-620; 516 NW2d 527 (1994). The transaction fee imposed by the city ordinance in this case is additional to the requirements of MCL 445.405 and creates no conflict therewith. Because there is no direct conflict between the city of Saginaw's ordinance and the secondhand and junk dealers act, both laws stand. *Walsh, supra* at 636.

### IV. EQUAL PROTECTION

Next, Stretch-A-Buck argues that the city of Saginaw's ordinance denies secondhand merchants equal protection under the law in that it treats similarly situated entities differently, without appropriate justification. We find no equal protection violation.

Whether a party is denied equal protection under the law is a constitutional question that is reviewed de novo. *People v Pitts*, 222 Mich App 260, 263; 564 NW2d 93 (1997), citing *People v White*, 212 Mich App 298, 304; 536 NW2d 876 (1995). In determining whether a law is constitutional, " '[e]very reasonable presumption or intendment must be indulged in favor of the validity of an act, and it is only when invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the Constitution that a court will refuse to sustain its validity.' " *Phillips v Mirac, Inc*, 470 Mich 415, 423; 685 NW2d 174 (2004), quoting *Cady v Detroit*, 289 Mich 499, 505; 286 NW 805 (1939). Ordinances enacted as an exercise of police powers are presumed to be constitutional and the burden is on the

challenger to prove otherwise. *Rental Prop Owners Ass'n of Kent Co, supra* at 253.

The essence of equal protection is that persons or entities under similar circumstances be treated alike. *Heidelberg Bldg, LLC v Dep't of Treasury*, 270 Mich App 12, 17; 714 NW2d 664 (2006). When reviewing an equal protection challenge, one of three tests can be applied depending on the type of classification made by the statute or ordinance and the nature of the interest affected. *Dawson v Secretary of State*, 274 Mich App 723, 738; 739 NW2d 339 (2007), citing *Proctor v White Lake Twp Police Dep't*, 248 Mich App 457, 469; 639 NW2d 332 (2001). There is no dispute that in this case, we must apply the rational basis test.

"Under the rational basis test, a [law] is constitutional if it furthers a legitimate governmental interest and if the challenged classification is rationally related to achieving that interest." *Boulton v Fenton Twp*, 272 Mich App 456, 467; 726 NW2d 733 (2006). The wisdom, need, appropriateness, and effects of the law are irrelevant. *Phillips, supra* at 434-435. A rational basis for a law exists when " 'any set of facts, either known or which could reasonably be assumed, even if such facts may be debatable,' " justify the classification. *Id.* at 435, quoting *Harvey v Michigan*, 469 Mich 1, 7; 664 NW2d 767 (2003).

Stretch-A-Buck concedes that the challenged city ordinance is designed, at least in part, to prevent trafficking in stolen goods, a legitimate governmental interest. Stretch-A-Buck asserts, however, that no rational basis exists for treating secondhand merchants differently than similarly situated entities such as "Goodwill Industries, the Salvation Army and the like," which are not subject to the transaction fees or electronic reporting requirements of the ordinance. We

disagree. Goodwill Industries International, Inc. (Goodwill), and The Salvation Army are nonprofit organizations selling donated, primarily "low-end" goods, making it highly unlikely that the goods were stolen. There is no monetary incentive for thieves to *donate* stolen goods or for nonprofit organizations to sell them. On the other hand, secondhand merchants such as Stretch-A-Buck are for-profit businesses selling goods, some of which may be "higher end," that the merchants receive through purchase, consignment, pawn, or otherwise. Trafficking in stolen goods is much more likely to occur at a business such as Stretch-A-Buck where thieves and the business itself stand to gain from selling the goods,[3] than at a nonprofit thrift store where the merchandise is donated. Therefore, a rational basis exists for subjecting secondhand merchants to the requirements of the challenged ordinance, to the exclusion of entities such as Goodwill and The Salvation Army. Stretch-A-Buck has not been denied equal protection under the law.

### V. UNLAWFUL TAX

Finally, Stretch-A-Buck argues that the $2 transaction fee imposed by the city's ordinance is a tax that violates the Headlee Amendment, Const 1963, art 9, § 31. We agree with the trial court that it is a valid user fee, not an unlawful tax.

Whether a charge is a user fee or a tax is a question of law that is reviewed de novo. *Bolt v City of Lansing*, 459 Mich 152, 158; 587 NW2d 264 (1998). The Headlee Amendment prohibits units of local government from levying any tax not authorized by law or charter without voter approval. If a charge imposed by a local

---

[3] To be clear, nothing in the record remotely suggests that Stretch-A-Buck deals in stolen goods.

ordinance is a user fee, and not a tax, the charge is not affected by the Headlee Amendment. *Id.* at 159. There is no bright-line distinction between a valid user fee and a tax that violates the Headlee Amendment. *Id.* at 160. "Generally, a fee is exchanged for a service rendered or a benefit conferred, and some reasonable relationship exists between the amount of the fee and the value of the service or benefit. A tax, on the other hand, is designed to raise revenue." *Id.* at 161 (quotation marks and citations omitted).

There are "three primary criteria to be considered when distinguishing between a fee and a tax." *Id.* First, "a user fee must serve a regulatory purpose rather than a revenue-raising purpose," although a fee may also be used to raise money as long as it is in support of the underlying regulatory purpose. *Id.*; *Graham v Kochville Twp*, 236 Mich App 141, 151; 599 NW2d 793 (1999). Second, a user fee must be proportionate to the necessary costs of the service rendered or the benefit conferred. *Bolt, supra* at 161-162. Third, a fee must be voluntary in nature, meaning that the payer of the fee must be able to refuse or limit its use of the service or benefit. *Id.* at 162. These criteria must be considered in their totality rather than in isolation. *Id.* at 167 n 16. Accordingly, "a weakness in one area would not necessarily mandate a finding that the charge at issue is not a fee." *Graham, supra* at 151.

The primary purpose of the city of Saginaw's ordinance is to regulate the secondhand industry. The city has the authority, pursuant to the secondhand and junk dealers act, to license, inspect, track, and generally regulate secondhand merchants. MCL 445.401 *et seq.* Ordinances similar to the one at issue, which require secondhand merchants to be licensed, keep fingerprints and detailed records of transactions, and report transactions to law

enforcement, are designed to prevent trafficking in stolen property under the guise of a legitimate secondhand business. The city of Saginaw's ordinance provides a measure of security to secondhand merchants by ensuring that the merchant is not unknowingly trafficking in stolen property, deterring the attempted pawning of stolen property, and protecting the merchant from extending money in exchange for property that may later be confiscated by the police. We recognize that regulating the secondhand industry benefits the general public as well, and that a regulatory fee must confer a benefit " 'upon the particular people who pay the fee, not the general public....' " *Westlake Transportation, Inc v Pub Service Comm*, 255 Mich App 589, 613; 662 NW2d 784 (2003), quoting *Graham, supra* at 151. But, a "regulatory fee can have dual purposes and still maintain its regulatory characterization." *Westlake Transportation, Inc, supra* at 613, citing *Graham, supra* at 151.

Stretch-A-Buck argues that even if the city's ordinance provides secondhand merchants with some service or benefit, the $2 transaction fee is disproportionate to the cost of the service rendered or benefit conferred. We disagree and find the reasoning of the trial court on this point persuasive. In its June 28, 2007, opinion, the court stated:

> The record here reflects that the $2.00 transaction fee is divided three ways with $0.50 being returned to the secondhand merchant for their expenses, $0.50 going to the electronic data manager for its services, and the remaining $1.00 going to the City to defray its expenses. As only 3 secondhand businesses are currently subject to the ordinance, and the 2 Plaintiffs here have not yet complied,[4] precise figures as to the amount of revenue going to the

---

[4] During oral arguments before this Court, counsel for Stretch-A-Buck indicated that it is now in compliance with the city's ordinance and that USA Cash is no longer operating within the city of Saginaw.

City are unavailable. However, the affidavits of owners Jeff Stover and Joseph Beaudry aver that each year the Plaintiff businesses enter into roughly 15,000 and 11,500 transactions per year. This would translate to annual fee revenues of $26,500. Assuming that . . . the third store similarly enters into 11,500 transactions, total yearly revenues of $38,000 would flow to the City under the regulation. Such a figure is not wholly disproportionate to the salary of the City's clerical worker who receives salary and benefits "in excess of $35,000 per year" as compensation for reviewing the secondhand merchant reports complied on the database. . . . Without this essential review of the transaction information, the reports would accomplish nothing and the regulatory purpose would go unfulfilled. Therefore, the Court finds that Plaintiffs have failed to produce evidence that would support a finding that the City's share of the fee is wholly disproportionate to the cost of regulating Plaintiff businesses.

With regard to the voluntariness of the fee, the trial court sated that "[b]y the plain language of the city ordinance, the reporting requirements and attendant regulatory fee only apply to an individual or business that chooses to enter into secondhand transactions of a certain volume within a given period of time. The decision to engage in secondhand transactions at all, and the number of transactions in which to engage, is a purely voluntary decision within the complete control of an individual or business." The city ordinance specifically states that "[a] secondhand merchant need not report electronically transactions taking place at a business location where the number of transactions in each ninety (90) day period does not exceed ten (10)." Saginaw Ordinances, title XI, § 110.25(D)(2). Thus, the trial court was correct in stating that the $2 transaction fee imposed by the ordinance only applies to individuals and businesses choosing to engage in more than 10 secondhand transactions in each 90-day period and, in

that sense, the transaction fee is voluntary. We acknowledge that for the owners of Stretch-A-Buck and similarly situated businesses, secondhand transactions represent a primary source of income and reducing the number of their transactions or relocating their businesses is impracticable. Nonetheless, we must consider the three primary criteria for distinguishing between a fee and a tax in their totality, not in isolation. *Bolt, supra* at 167 n 16. Considering the three criteria together, particularly that the city ordinance serves to regulate the secondhand industry and the transaction fee imposed by the ordinance is proportional to the benefit conferred, we find that the transaction fee is a user fee, not a tax, and is therefore unaffected by the Headlee Amendment.

Affirmed.