# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL KNOLL,

Plaintiff/Counter-Defendant-
Appellant,

v

CHEWD, LLC,

Defendant/Counter-Plaintiff-
Appellee,

and

CHEWD HOLDINGS, LLC, ABHIJEET
KUMAR, BENJAMIN TATUM, and PETER
ZORA,

Defendants-Appellees.

UNPUBLISHED
April 26, 2016

No. 325588
Wayne Circuit Court
LC No. 13-015135-CK
14-003318-CB

Before: JANSEN, P.J., and SERVITTO and M. J. KELLY, JJ.

PER CURIAM.

Plaintiff, Michael Knoll, appeals by right the trial court's order granting the motion for summary disposition by defendants, Chewd, LLC (Chewd), Chewd Holdings, LLC (Chewd Holdings), Abhijeet Kumar, Benjamin Tatum, and Peter Zora. Knoll argues on appeal that the court erred when it dismissed his claims. For the reasons more fully explained below, we vacate the trial court's order dismissing Knoll's claims and remand for further proceedings.

## I. BASIC FACTS

Kumar, Tatum, and Zora established Chewd to develop a website that would provide an online ordering system for restaurants that did not have this service, and enable consumers to browse local restaurant menus and order food online.

In April 2013, Kumar, Tatum, and Zora entered into an agreement with Knoll. Knoll agreed to provide computer coding and programming services for Chewd's website. In exchange, Kumar, Tatum, and Zora agreed to transfer "up to six and a half percent (6.5%) of the issued and outstanding stock of Chewd." More specifically, they intended to give him 250

-1-

shares on the closing date and "up to Four Hundred Shares (400) to be issued in increments based on performance markers set by the board . . . for a total of Six Hundred and Fifty (650) total shares out of Ten Thousand (l0,000) . . . ." The agreement, which was memorialized in a letter to Knoll, clarified that the purchase price would be "in the form of 'sweat equity' . . . measured by performance markers set forth by Chewd." The parties further agreed that Knoll would get his stock "only after successful completion of performance markers and tasks set forth by Chewd."

Knoll apparently began developing Chewd's website, but soon became unhappy with his work load and his treatment by Kumar, Tatum, and Zora. In July 2013, Knoll sent an email advising the other members that he wished to resign. A few days later, Kumar, Tatum, and Zora met with Knoll and discussed Knoll's decision. After their meeting, Kumar, Tatum, and Zora transferred a 4.5% interest to Knoll as an incentive. Nevertheless, Knoll sent an email, which was dated July 30, 2013, in which he complained that his work load was affecting his health and expressed discontent with the critique of his coding, the timing and location of meetings, and the excessive oversight of his work. He agreed in the email that it "is for the best" that Chewd bring in "new people" because he would "not be able to perform at the superhuman levels expected" by Kumar, Tatum, and Zora. He opined that it "would be in everyone's best interest for Chewd to buy [him] out." He further suggested that the buyout should be determined by the value of the work he had performed, which he estimated at $10,000 to $15,000, rather than the value of his shares.

In August 2016, Kumar emailed a proposal to Knoll offering to purchase his 4.5% membership interest for $2,000. The letter stated that the offer was "based upon the fair market value of the Membership Interest . . . plus a premium that Chewd is offering as an incentive to resolve this matter." Kumar further warned Knoll that, "[i]n the event that you do not accept this proposal, the majority owners of Chewd are inclined to sell the sole asset of Chewd and dissolve the entity." According to Kumar, Chewd's sole asset was its domain name. If the majority were to sell the sole asset, Kumar stated, "you would be entitled to 4.5% of the amount, if any, remaining after payment of all debts and liabilities of Chewd."

Knoll sued Chewd in November 2013. He alleged that Chewd breached its agreement, which claim he labeled an anticipatory breach, by failing to "honor, redeem and/or evaluate [his] shares" and by failing to "either maintain his common shares or to receive a proper value for their redemption . . . ." He also alleged that Chewd breached its fiduciary to "promote the value of the shares . . . and not diminish them." Knoll asked the court to order an accounting of Chewd and claimed that Chewd was unjustly enriched by his efforts.

Chewd countersued Knoll for breaching the parties' agreement by failing to "contribute the agreed-upon services." Chewd alleged that Knoll owed it "cash equal to the value of the services he promised to perform" under MCL 450.4302(2), and that he breached his fiduciary duties by misrepresenting his ability to perform under the contract. Chewd also alleged claims for promissory estoppel and unjust enrichment.

Knoll then sued Chewd Holdings, Kumar, Tatum, and Zora in a separate complaint; he alleged that Kumar, Tatum, and Zora created a new entity, Chewd Holdings, in order to transfer Chewd's assets to the new company and avoid paying him. Knoll alleged claims of fraudulent conveyance, successor liability, and fraud.

The trial court consolidated the two lawsuits in May 2014.

In September 2014, Chewd, Chewd Holdings, Kumar, Tatum, and Zora moved for summary disposition of Knoll's claims under MCR 2.116(C)(8). The trial court granted the motion and dismissed Knoll's claims against Chewd, Chewd Holdings, Kumar, Tatum, and Zora without prejudice in October 2014. Thereafter, Chewd moved to voluntarily dismiss its counterclaims. The trial court granted the motion and dismissed the counterclaims without prejudice in December 2014.

Knoll now appeals in this Court.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

On appeal, Knoll argues that the trial court erred in several ways when it dismissed his claims. Although the trial court stated that it was granting the motion for summary disposition by Chewd, Chewd Holdings, Kumar, Tatum, and Zora because Knoll's claims were premature, we decline to consider whether the trial court's stated rationale for granting the motion was correct. Because this Court reviews a decision on a motion for summary disposition de novo, see *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999), we shall limit our analysis to examining whether Chewd, Chewd Holdings, Kumar, Tatum, and Zora established that Knoll's claims—as pleaded—were so deficient that it was proper to dismiss the claims under MCR 2.116(C)(8).

### B. MCR 2.116(C)(8)

In reviewing a motion under MCR 2.116(C)(8), courts do not examine whether there is evidentiary support for the claim; rather, we consider the pleadings alone to determine whether they are legally sufficient to state a claim. *Maiden*, 461 Mich at 119-120. We must accept as true all well pleaded allegations to determine whether the opposing party's pleadings allege a prima facie case. *Radtke v Everett*, 442 Mich 368, 373; 501 NW2d 155 (1993).

We note that, on appeal, Knoll repeatedly emphasizes that a court may not grant summary disposition under MCR 2.116(C)(8), if it is possible that the nonmoving party could develop facts to justify recovery. He then discusses evidence that might support *a* claim. The factual development, however, must relate to the claim actually pleaded: "A motion under MCR 2.116(C)(8) may be granted only where the claims *alleged* are 'so clearly unenforceable as a matter of law that no factual development could possibly justify recovery.' " *Maiden*, 461 Mich at 119 (emphasis added and citation omitted). Thus, the question is whether Knoll alleged a claim that would entitle him to relief if he could develop facts to support the claim *as alleged*; it is not whether he could develop facts to support a different—albeit similar—claim. Where the allegations are so deficient that, even if true and supported by evidence, they would not give rise

to liability as matter of law, the trial court should grant the motion to dismiss under MCR 2.116(C)(8). See *USA Cash #1, Inc v City of Saginaw*, 285 Mich App 262, 265; 776 NW2d 346 (2009) (stating that courts examine the pleadings to determine whether the claim is so deficient that recovery would be impossible under that theory even when the allegations are accepted as true and viewed in the light most favorable to the plaintiff).

## C. CLAIMS AGAINST CHEWD

### 1. BREACH OF CONTRACT-ANTICIPATORY REPUDIATION

In stating his claim of breach of contract-anticipatory repudiation, Knoll alleged that Chewd breached the agreement attached to his complaint by failing "to honor, redeem and/or evaluate the shares of common stock" issued to him and by failing to "maintain" or properly "value" the shares for redemption. Knoll did not allege that Chewd had an obligation under the attached agreement that required Chewd to honor, redeem, evaluate, or value the shares in any particular way. By failing to allege the existence of a contractual obligation to perform, Knoll failed to plead an essential element of his breach of contract claim. See *Miller-Davis Co v Ahrens Const, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). Knoll also did not allege that Chewd declared its intent not to perform any act specifically required by the agreement, which is essential to establish a claim of anticipatory repudiation. *Stoddard v Manufacturers Nat'l Bank*, 234 Mich App 140, 163; 593 NW2d 630 (1999).

### 2. FIDUCIARY DUTY

Knoll also failed to state a claim on which relief could be granted as to breach of fiduciary duty. He argued that as a shareholder, Chewd "owed [him] a fiduciary duty to promote the value of the shares of [Chewd] and not diminish them." Knoll further claimed vaguely that Chewd had "acted in its own self-interest, which was in conflict with" Knoll's interests. Although Knoll asserted that Chewd breached its fiduciary duty to him by "virtue of his conduct described above," presumably referring to his factual allegations, Knoll did not allege any specific act that amounted to a failure to promote the value of its shares or to diminish the values. Instead, Knoll left Chewd to speculate about the conduct that he claimed amounted to a breach of fiduciary duty. See *Meyer and Anna Prentis Family Foundation, Inc v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 43; 698 NW2d 900 (2005) (stating that a fiduciary duty involves a situation where the fiduciary has a duty to act for his or her principal's benefit regarding matters within the scope of the relationship). Consequently, even assuming that an artificial entity has a fiduciary duty to promote its shares or at least not devalue its owners' ownership interests, which is not entirely clear, Knoll failed to allege a claim that Chewd took an action that amounted to a breach of any such fiduciary duty.

### 3. ACCOUNTING

In his claim for "a true and accurate accounting" of all Chewd's activities and assets, Knoll failed to allege that he submitted a written request for this information as required under MCL 450.4503. Knoll did not allege that he properly requested the information or that Chewd otherwise had an obligation to provide its financial information in the absence of such a request. He also failed to state grounds establishing the need for an equitable accounting. See, e.g.,

*Second Mich Co-op Housing Ass'n v First Mich Co-op Housing Ass'n*, 358 Mich 252; 99 Nw2d 665 (1959). Consequently, he failed to state a claim for an accounting on which relief could be granted.

### 4. UNJUST ENRICHMENT

Knoll also claimed that Chewd was unjustly enriched by retaining his work product without properly compensating him. However, Knoll alleged that he agreed to work for the ownership interest stated in his agreement with Chewd. Because the compensation was governed by an express agreement, there can be no claim of unjust enrichment. See *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 478; 666 NW2d 271 (2003) (stating that a contract cannot be implied where there is an express contract covering the same subject matter). Thus, as pleaded, he could not establish a claim of unjust enrichment as a matter of law.

### D. CLAIMS IN SECOND COMPLAINT

In his second complaint, Knoll alleged that Chewd Holdings, Kumar, Tatum, and Zora owed him damages premised on a fraudulent conveyance of assets from Chewd to Chewd Holdings. Under the fraudulent transfer act, Knoll had to allege that he had a creditor-debtor relationship which was adversely affected by the transfer of assets, which he did not do. See MCL 566.31(d) and (f). Indeed, he actually alleged that the transfer of Chewd's assets—which assets he did not identify—rendered *Chewd Holdings* insolvent; he further did not explain how Chewd Holdings' insolvency implicated him. Moreover, although the Michigan Limited Liability Company Act prohibits limited liability companies from making distributions if the company would be unable to pay its debts after making the distribution, see MCL 450.4307(1)(a), Knoll did not allege that Chewd owed him any money or that Chewd would be unable to pay its debts. As such, he failed to allege an actionable fraudulent conveyance. Similarly, because Knoll failed to allege a fraudulent transfer, he cannot establish that Chewd Holdings assumed any liability that Chewd may have owed to him as a successor entity. See *Foster v Cone-Blanchard Machine Co*, 460 Mich 696, 702-703; 597 NW2d 506 (1999) (stating the situations under which a successor entity may be held liable for its predecessor's debts).

Finally, Knoll alleged in his second complaint that Chewd Holdings, Kumar, Tatum, and Zora committed fraud when they "intentionally, maliciously, and without just cause, engaged in misrepresentations regarding their contractual obligations and their intention to pay for the services delivered." Knoll did not further explain the nature of the "misrepresentations" other than to reference the facts section of his complaint. Allegations of fraud must be stated with particularity. See *Michigan v CVS Caremark*, 496 Mich 45, 63; 852 NW2d 103 (2014). Knoll's allegations were not sufficiently pleaded to meet the pleading requirements of MCR 2.112(B)(1).

### III. CONCLUSION

To the extent that the trial court determined that Chewd, Chewd Holdings, Kumar, Tatum, and Zora were entitled to summary disposition under MCR 2.116(C)(8), it did not err. However, a dismissal under MCR 2.116(C)(8) must be with prejudice, see *ABB Paint Finishing, Inc v Nat'l Union Fire Ins Co of Pittsburg*, 223 Mich App 559, 562-563; 567 NW2d 456 (1997), and the trial court here granted the motion and dismissed Knoll's claims without prejudice. In

addition, the trial court should normally give the nonmoving party an opportunity to amend his or her pleadings to correct the deficiencies before dismissing the claims under MCR 2.116(C)(8), which it did not do. See MCR 2.116(I)(5). Consequently, we must vacate the trial court's order dismissing Knoll's claims without prejudice and remand this case for further proceedings.

On remand, the trial court shall give Knoll a reasonable opportunity to amend his pleadings to properly state his claims against Chewd, Chewd Holdings, Kumar, Tatum, and Zora. If Knoll corrects the deficiencies as to any of his claims, the trial court shall deny the motion for summary disposition under MCR 2.116(C)(8) as to that claim. If Knoll fails to correct the deficiencies as to one or more of his claims, the trial court shall grant the motion as to that claim and dismiss it with prejudice.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Because none of the parties have prevailed in full on appeal, we order that none may tax costs. MCR 7.219(A).

/s/ Deborah A. Servitto
/s/ Michael J. Kelly