*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GOLDEN ROCKIES, INC.,

        Plaintiff-Appellant,

v

CITY OF UTICA and CITY OF UTICA CITY COUNCIL,

        Defendants-Appellees,

and

MK GROUP MI, LLC, doing business as JOYOLOGY,

        Intervening Defendant.

UNPUBLISHED
October 12, 2023

No. 363685
Macomb Circuit Court
LC No. 2021-001061-CZ

Before: MURRAY, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

Plaintiff, Golden Rockies, Inc., appeals as of right the trial court's opinion and order denying its motion for partial summary disposition under MCR 2.116(C)(10), and granting summary disposition in favor of defendants, the city of Utica and the Utica City Council (collectively "the City"), and intervening defendant MK Group MI, LLC, doing business as Joyology, pursuant to MCR 2.116(C)(10). We affirm.

## I. BACKGROUND

Plaintiff filed an application to acquire a license to become a medical marihuana provisioning center in the city of Utica, but was not one of the two applicants approved for a license. After its application was denied, plaintiff filed this action challenging the City's marihuana business ordinance. Plaintiff alleged that the ordinance was not properly enacted and that various provisions of the ordinance violated the Michigan Regulation and Taxation of Marihuana Act (MRTMA), MCL 333.27951 *et seq*.

-1-

Plaintiff alleged that in December 2019, an initiative for enactment of a marihuana business ordinance was presented to the Utica city clerk to allow for the operation of a limited number of marihuana businesses. Plaintiff alleged that the initiative petition complied with the requirements of § 11.2 of the Utica city charter because it contained the valid signatures of at least 10 percent of the number of active voters registered at the last city or general election preceding the filing of the initiative. Plaintiff further alleged that under the city charter, the city clerk was required to present the initiative to the city council at its next regular meeting, and that the city council could either (1) adopt the ordinance as presented or (2) submit the proposal to the City's electors, but neither option was followed.

The city council ultimately adopted a marihuana business ordinance at a meeting on January 27, 2020. Plaintiff alleges that this ordinance was not properly enacted because changes were made to the initiative before it was submitted to the city council, and the ordinance as presented in the initiative was never submitted to either the city council or the City's electors. It is undisputed, however, that plaintiff never challenged the validity of the ordinance on this basis when it was presented to and adopted by the city council, or while plaintiff's license application under the adopted ordinance was being considered.

Section 14-612(a) of the marihuana business ordinance as adopted provides that the city could authorize no more than two medical marihuana provisioning centers, with one to be located on the west side of Van Dyke Avenue, south of Hall Road, with "a buffer of at least 700 feet between facilities as measured from the nearest point of property line to property line." Section 14-612(b) provides that "the city shall authorize no more than two marihuana retailer licenses in the city which shall co-locate with the location of a licensed medical marihuana provisioning center." An applicant who wished to operate a marihuana provisioning center or apply for a marihuana retailer license was required to file an application with the city clerk. Under § 14-615(b), once a completed application was received, the city clerk was to forward a copy of the application to the fire chief, the building inspector, the city planner, and the city treasurer. Under § 14-615(f)(1)-(9), the city clerk was responsible, "with the assistance of legal advice from the city attorney," to "assess, evaluate, score and rank all applications for licenses to operate a medical marihuana provisioning center, [or] marihuana retailer" on the basis of the scoring rubric set forth in the ordinance. The scoring and ranking information is then forwarded to the city council, which is charged with awarding the licenses as set forth in the ordinance. See § 14-615(h)(1)-(4).

On June 22, 2020, the city awarded the two licenses for a marihuana provisioning center to First Property Holdings, LLC, doing business as Rize, and to MK Group MI. Although plaintiff had received a higher score than MK Group MI, it was not awarded a license because its business location was within 700 feet of First Property Holdings' location and First Property Holdings was the higher-scoring applicant.

Plaintiff filed an administrative appeal of the denial of its license application with the city clerk on July 6, 2020. In that appeal, plaintiff argued for the first time that the City's marihuana business ordinance was not properly enacted because the adopted ordinance differed from the ordinance as presented with the initiative petition. The City claimed that the ordinance as presented with the initiative petition was not submitted to the city council because it was determined that the petition did not contain the required number of valid signatures. The City further claimed that the city attorney thereafter worked with Christopher Aiello and Aaron Geyer,

both of whom were affiliated with plaintiff, to draft a similar ordinance, which Aiello and Geyer both approved and which was duly submitted to and adopted by the city council.

On April 23, 2021, plaintiff filed this action against the city of Utica and the Utica City Council. As relevant to this appeal, Count 2 of plaintiff's complaint alleged that the City's marihuana business ordinance was enacted in violation of the city charter because it differed from the ordinance as presented in the initiative petition; Count 3 alleged violation of procedural and substantive due process; Count 4 requested a writ of mandamus vacating the two previously awarded licenses and ordering the city council to either adopt the initiative as presented or submit it to the voting public; and Count 5 alleged a violation of the MRTMA. MK Group MI was later permitted to intervene as a defendant.

Eventually, plaintiff, the City, and MK Group MI all filed motions for summary disposition. In plaintiff's motion, it argued that the City's marihuana business ordinance was invalid because it was not approved by the city council as presented in the initiative petition or submitted to the electors. Plaintiff also claimed that the requirement of a 700-foot buffer between locations was invalid under and preempted by the MRTMA. Plaintiff further argued that the scoring criteria in the ordinance violated the MRTMA.

In the City's motion, it argued that the ordinance as presented in the initiative was never submitted to the city council because the petition lacked the requisite number of valid signatures. Regardless, according to the City, after the initiative was submitted, plaintiff's representatives, Aiello and Geyer, worked with the city attorney to revise the proposed ordinance, and Aiello and Geyer approved the revised version of the ordinance before it was duly submitted to and adopted by the city council. The City also urged the trial court to invoke the doctrine of laches to estop plaintiff from arguing that the ordinance was not properly enacted because plaintiff waited until after its application was denied to first argue that the ordinance under which its application was considered was not duly enacted; plaintiff never challenged the validity of the ordinance when it was submitted to and approved by the city council or while plaintiff's license application submitted pursuant to the adopted ordinance was pending. The City also denied that the 700-foot buffer zone either conflicted with or was not permitted by the MRTMA. In response to plaintiff's challenge to the ordinance's scoring criteria, the City argued that the MRTMA provided it with broad discretion to consider various factors in determining which applicants were best suited to operate a marihuana establishment within the city and that the challenged scoring criteria did not otherwise violate the MRTMA. MK Group MI concurred in the City's motion for summary disposition.

Following a hearing, the trial court denied plaintiff's motion for partial summary disposition and granted summary disposition in favor of the City and MK Group MI pursuant to MCR 2.116(C)(10). The court concluded that the City's marihuana business ordinance was duly enacted and agreed with the City that the doctrine of laches prevented plaintiff from challenging the ordinance on the basis that it was not properly enacted. The court explained that laches applied because plaintiff did not challenge the validity of the ordinance when it was submitted to and adopted by the city council or when it submitted its application for a license under the adopted ordinance, but instead waited until after its application was denied—and licenses were granted to others—to argue that the adopted ordinance was not properly enacted. The court also rejected plaintiff's arguments that the 700-foot buffer requirement and the scoring factors used by the City

to score competing applications either conflicted with or violated the MRTMA. This appeal followed.

## II. THE CITY'S MARIHUANA BUSINESS ORDINANCE

Plaintiff first argues that the trial court erred by dismissing plaintiff's claim that the City's marihuana business ordinance was not duly enacted under the city charter. We disagree.

## A. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Murphy v Inman*, 509 Mich 132, 143; 983 NW2d 354 (2022). The trial court denied plaintiff's motion for partial summary disposition under MCR 2.116(C)(10), and granted defendants' motion for summary disposition under MCR 2.116(C)(10). Although plaintiff also moved for summary disposition under MCR 2.116(C)(9) (failure to state a valid defense) and the City also moved for summary disposition under MCR 2.116(C)(8) (failure to state a valid claim), review of a motion under those subrules is limited to the pleadings, *Twp of Williamston v Hudson*, 311 Mich App 276, 287; 874 NW2d 419 (2015), the parties submitted substantial documentary evidence in support of and opposition to the respective motions, and the trial court considered that evidence in deciding the motions. Therefore, the motions are properly considered under only MCR 2.116(C)(10). See *Fodale v Waste Mgt of Mich, Inc*, 271 Mich App 11, 36; 718 NW2d 827 (2006). A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) is reviewed as follows:

> When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. *Id*. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Johnson*, 502 Mich at 761 (quotation marks, citation, and brackets omitted). [*El-Khalil*, 504 Mich at 160.]

This Court reviews de novo whether the trial court properly interpreted a municipal ordinance or charter, *Youmans v Charter Twp of Bloomfield*, 336 Mich App 161, 211; 969 NW2d 570 (2021), questions of statutory interpretation, *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 202; 731 NW2d 41 (2007), and whether to apply the equitable doctrine of laches, *Dep't of Agriculture & Rural Dev v Engle*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 359098); slip op at 6.

## B. ANALYSIS

At issue here is whether the City violated its own city charter in adopting its marihuana business ordinance. This Court interprets a municipal ordinance in the same way that it interprets a state statute. *Brandon Charter Twp v Tippett*, 241 Mich App 417, 422; 616 NW2d 243 (2000). All of an ordinance's provisions must be read in context, giving each word its plain and ordinary

meaning. *Barrow v Detroit Election Comm*, 301 Mich App 404, 413-414; 836 NW2d 498 (2013). If the language of the ordinance is clear and unambiguous, courts are required to apply the ordinance as written. *Brandon Charter Twp*, 241 Mich App at 422. However, if reasonable minds could disagree about the meaning of the ordinance, judicial construction is appropriate. *Id*.

Article XI of the Utica City Charter addresses ordinances presented by initiative petitions and provides, in pertinent part:

### Section 11.1 Ordinance initiated by petition.

An ordinance may be initiated by petition, or electors may petition for a referendum on an ordinance enacted by the Council where the expenditure of the general funds of the City is in [sic] amount in excess of that which it would cost to hold such referendum.

### Section 11.2 Initiatory and referendary petitions.

An initiatory or referendary petition shall be signed by registered electors of the City. The minimum number of valid signatures shall be ten percent (10%) of the number of active voters registered at the last City or general election preceding the filing date of said petition.

(a.) The petition shall be filed with the Clerk not more than ninety (90) days after the date of the earliest signature.

(b.) Before circulation, all such petitions may be approved as to form by the Clerk. Petitions may be on more than one page.

(c.) Each signer of a petition shall sign in ink or indelible pencil and shall include the date and place of residence by street and number or by description sufficient to identify it.

(d.) On each petition, there shall be a sworn affidavit by the circulator thereof stating the number of signers thereto, attesting that each signature is that of the person filing, and attesting that each signature was signed in the presence of the circulator.

(e.) If the petition is found to contain an insufficient number of signatures of registered electors of the City or to be improper as to form or compliance with the provisions of this Charter, the person filing such petition shall be allowed ten (10) days from notification of noncompliance for the filing of supplemental petition papers. The ten (10) days shall not be part of the ninety day limitation. Only one supplemental filing shall be allowed.

(f.) When the petition is found sufficient and proper, the Clerk shall present it [to] the Council at its next regular meeting.

### Section 11.3 Petition Procedure.

Upon receiving an initiatory or referendary petition from the Clerk, the Council shall within thirty (30) days either:

(a.) If it is an initiatory petition, adopt the ordinance as submitted in the petition or determine to submit the proposal to the electors of the City, or

(b.) If it is a referendary petition, repeal the ordinance to which the petition refers or determine to submit the proposal to the electors of the City.

It is undisputed that the marihuana business ordinance that was submitted to and ultimately adopted by the city council differed from the version of the ordinance as presented in the initiative petition. It is also undisputed that the ordinance as presented in the initiative petition was never submitted to the city council or presented to the City's electors. As evidence in this case revealed, this was because the city clerk determined that the petition did not contain valid signatures from 10% of the number of active voters registered at the last city or general election preceding the filing of the initiative, as required by the city charter. Plaintiff argues, however, that the City's 10% requirement is preempted by the MRTMA, which contains a lesser 5% requirement. MCL 333.27956(1) provides in relevant part:

Individuals may petition to initiate an ordinance to provide for the number of marihuana establishments allowed within a municipality or to completely prohibit marihuana establishments within a municipality, and such ordinance shall be submitted to the electors of the municipality at the next regular election when a petition is signed by qualified electors in the municipality in a number greater than 5% of the votes cast for governor by qualified electors in the municipality at the last gubernatorial election.

Resolution of this dispute, however, is unnecessary to resolve the issue presented on appeal because, even if plaintiff is correct, it does not establish that the ordinance adopted by the city council was not duly enacted. If the city clerk should have submitted the initiative petition ordinance as presented to the city council, the proper remedy for her failure to do so was to file an action for a writ of mandamus[1] before the city council considered the revised ordinance to require

---

[1] A writ of mandamus is appropriate if

"(1) the party seeking the writ has a clear legal right to performance of the specific duty sought, (2) the defendant has the clear legal duty to perform the act requested, (3) the act is ministerial and involves no exercise of discretion or judgment, and (4) no other remedy exists, legal or equitable, that might achieve the same result." [*Zelasko v Charter Twp of Bloomfield*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359002); slip op at 9 n 5, quoting *Lickfeldt v Dep't of Corrections*, 247 Mich App 299, 302, 636 N.W.2d 272 (2001).]

Mandamus is the appropriate remedy for a party seeking to compel action by election officials. *Attorney General v Bd of State Canvassers*, 318 Mich App 242, 248; 896 NW2d 485 (2016).

the city council to either adopt the ordinance as submitted in the initiative petition or submit the proposal to the City's electors. Otherwise, the city clerk's determination that the initiative petition lacked an appropriate number of valid signatures was an appropriate reason under the city charter to not submit the initiative petition ordinance to the city council. Because of this, and because no action for a writ of mandamus to compel the city clerk to submit that ordinance to the city council was ever filed, the city council was free to independently consider other proposed ordinances. The city council, as the legislative body for the City, had general authority to adopt ordinances under § 13 of the Utica City Charter and under MCL 117.3(k) of the Home Rule City Act, and MCL 333.27956(2) expressly authorized the City to adopt ordinances related to the regulation of marihuana establishments. See also *Pinebrook Warren, LLC v City of Warren*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket Nos. 355989, 355994, 355995, 356005, 356011, 356017, 356023, 359269, 359285); slip op at 20, lv pending ("As a home rule city, the City had the authority to enact ordinances as a valid exercise of its police power so long as the ordinance did not conflict with the constitution or general law."). Thus, as the trial court observed, the city council "had the authority to adopt its own marihuana ordinance even without a petition," and there was nothing improper or illegal about its consideration of the ordinance that it ultimately adopted.

In sum, any improper action by the City was limited to its failure to submit the initiative petition ordinance to the city council, which would have been correctable through a writ of mandamus had one been sought. That remedy having not been pursued, the City was otherwise free to independently prepare its own ordinance for consideration by the city council, which is what happened, and the city council duly considered and approved that ordinance, acting within its legislative authority.

More significantly, the trial court did not err by determining that the equitable doctrine of laches applied to preclude plaintiff from challenging the validity of the City's marihuana business ordinance on the ground that it was not properly enacted in compliance with the city charter. Estoppel by laches results from a party's failure to do something that should have been done under the circumstances or the failure to claim or enforce a certain right at the appropriate time. *New Prod Corp v Harbor Shores BHBT Land Dev, LLC*, 331 Mich App 614, 626-627; 953 NW2d 476 (2019). If a party does not assert a right that it could have raised earlier, then that party is guilty of laches. *Id*. at 627. For the opposing party to successfully assert laches as an affirmative defense, the defendant is required to show that they were in some way prejudiced by the delay. *Id*.

As plaintiff acknowledges on appeal, it did not notify the city of its position that the marihuana business ordinance was improperly enacted until July 2020, after its application for a license had been denied and licenses were awarded to two of its competitors. The trial court found that it was appropriate to apply the doctrine of laches because plaintiff "never voiced concern before passage of the current Ordinance" and, in fact, "submitted an application and sought approval under the Ordinance, as revised." Although plaintiff contends that it did "just about everything possible to bring this information to the proper authorities" by pursuing its remedies in a timely manner, plaintiff does not dispute that it never argued that the city council lacked the authority to consider the submitted ordinance before adopting it, or argued that the ordinance was not properly enacted while plaintiff was proceeding with its license application under the adopted ordinance. It was only after plaintiff's application was denied and licenses were awarded to two of plaintiff's competitors that plaintiff challenged the validity of the ordinance on the ground that it was not properly enacted.

To the extent that plaintiff argues that it did not have notice that the City did not enact the marihuana business ordinance as presented in the initiative petition before the City denied its application, the record does not support this claim. Plaintiff's complaint in this matter identifies both Christopher Aiello (Aiello) and Aaron Geyer as attorneys for plaintiff. Defendants submitted corporate documentation for plaintiff from Michigan's Licensing and Regulatory Affairs, which showed that Geyer had served as plaintiff's registered agent since 2018 and that Aiello's brother, Joseph Aiello (Joseph), was listed at plaintiff's president, treasurer, secretary, and director, but provided an address that was the same address as Aiello and Geyer's law firm. Although the record does not clearly establish that plaintiff was involved in submitting the initiative petition, the record unequivocally establishes that Aiello and Geyer were both actively involved in working with the city attorney to revise the proposed ordinance as presented in the initiative petition before a revised ordinance was submitted to the city council. Indeed, Aiello averred in an affidavit that the city attorney contacted him in early December 2019, approximately a week after the city received the initiative petition, and asked for his input regarding the language of the proposed ordinance. The city attorney averred in an affidavit that shortly after the petitioner was informed that the December 2019 initiative contained an insufficient number of valid signatures, Aiello contacted her to inquire "if we could work on revisions to the December 2019 initiative together and come up with a proposed ordinance that I could present to City Council instead of the petitioner submitting supplemental signatures with the December 2019 initiative." The city attorney also averred that after revisions were made to the initiative by herself, Aiello, and Geyer, both Aiello and Geyer approved the revised version of the ordinance before it was submitted to the city council. E-mail correspondence between the city attorney, Aiello, and Geyer confirm that they communicated regarding drafts of the ordinance on December 17, 2019, and January 4, 2020, and that on January 7, 2020, the city attorney forwarded proposed revisions to the ordinance to Aiello and Geyer and informed them that "[t]he city had some thoughts on changes to the ordinance." In response, Geyer informed the city attorney that both he and Aiello had reviewed the changes and found them acceptable.

In sum, the record clearly establishes that Aiello and Geyer were aware that the ordinance that was submitted to and approved by the city council differed from the ordinance as presented in the initiative petition. The record also unequivocally establishes Geyer's affiliation with plaintiff at the time Geyer was actively working with the city attorney to revise the ordinance initiative as presented and approved the revisions, and compelling evidence also linked Aiello to plaintiff, given that Aiello and Geyer were members of the same firm and that Aiello's brother, Joseph, was listed as plaintiff's sole officer and director, but listed the address of Aiello's firm as his registered address. Accordingly, there is no merit to plaintiff's claim that it did not know that the ordinance as adopted differed from the ordinance as presented in the initiative petition before its license application was denied.

On this record, the trial court properly found that any claim that the City's marihuana business ordinance was not properly enacted should have been raised sooner, and that it would be inequitable to allow plaintiff to belatedly challenge the validity of the enactment procedure after the City denied plaintiff's application and awarded licenses to plaintiff's competitors. The trial court properly found that the necessary prejudice was established in this case, see *New Prod Corp*, 331 Mich App at 627, because the City acted in reliance on the adopted and unchallenged ordinance in reviewing all of the submitted applications and awarding licenses to two other applicants. As the trial court observed, "It is simply too prejudicial to now say the Council should

go back to the drawing board and consider a previous draft of the Ordinance with language [plaintiff] now believes to be more advantageous." Accordingly, the trial court did not err by applying the equitable doctrine of laches to preclude plaintiff from pursuing its claim that the City's marihuana business ordinance was not properly enacted.

### III. 700-FOOT BUFFER ZONE

Plaintiff next argues that the requirement of a 700-foot buffer zone between marihuana establishments in the City's marihuana business ordinance is invalid because it conflicts with and is preempted by the MRTMA. We disagree.

Whether a state statute preempts a local ordinance is a question of statutory interpretation that is reviewed de novo. *DeRuiter v Twp of Byron*, 505 Mich 130, 139; 949 NW2d 91 (2020).

"Generally, local governments may control and regulate matters of local concern when such power is conferred by the state." *Id.* at 140. "State law, however, may preempt a local regulation either expressly or by implication." *Id.* In *DeRuiter*, our Supreme Court explained:

> Implied preemption can occur when the state has occupied the entire field of regulation in a certain area (field preemption) or when a local regulation directly conflicts with state law (conflict preemption). In the context of conflict preemption, a direct conflict exists when "the ordinance permits what the statute prohibits or the ordinance prohibits what the statute permits." [*Id*. at 140 (citations omitted).]

To determine whether a city ordinance conflicts with a state statute, it is necessary to examine the relevant provisions of both the statute and the ordinance. *Id*. at 140-141. If a municipal ordinance regulates an area that a state statute also regulates "with mere differences in detail," it "is not rendered invalid due to conflict." *USA Cash #1, Inc, v City of Saginaw*, 285 Mich App 262, 267; 776 NW2d 346 (2009). Similarly, additional regulation by a municipal ordinance of a state law generally does not constitute a conflict, and "[w]here no direct conflict exists, both laws stand." *Id*.

At issue here is § 14-612 of the City's marihuana business ordinance. Plaintiff challenges that section's requirement of a 700-foot buffer zone between marihuana establishments. Section 14-612 provides:

> (a) Pursuant to section 205 of the MMFLA, MCL 333.27205, the city shall authorize no more than two medical marihuana provisioning center licenses in the city. A medical marihuana provisioning center shall be located on the West side of Van Dyke Avenue, and South of Hall Road (M-59). *There shall [be] a buffer of at least 700 feet between facilities as measured from the nearest point of property line to property line*. The city shall authorize no more than one medical marihuana grower license that shall be located in an area zoned for industrial use. The city shall not authorize any licenses to operate a medical marihuana processor, medical marihuana safety compliance facility, or medical marihuana secure transporter in the city.

(b) Pursuant to section 6 of the MRTMA, MCL 333.27956, the city shall authorize no more than two marihuana retailer licenses in the city which shall co-locate with the location of a licensed medical marihuana provisioning center.

(c) The city shall authorize no more than one marihuana grower license and one medical marihuana grower license that shall be co-located at the same location and in an area zoned for industrial use.

(d) The city shall not authorize any licenses to operate a marihuana microbusiness or designated consumption establishment in the city.

(e) The 1,000-foot restriction in MCL 333.27959(3)(c) is hereby eliminated. [Emphasis added.]

MCL 333.27959 is the state statute that governs licenses to operate marihuana establishments and provides, in pertinent part:

(1) Each application for a state license must be submitted to the department. Upon receipt of a complete application and application fee, the department shall forward a copy of the application to the municipality in which the marihuana establishment is to be located, determine whether the applicant and the premises qualify for the state license and comply with this act, and issue the appropriate state license or send the applicant a notice of rejection setting forth specific reasons why the department did not approve the state license application within 90 days.

\* \* \*

(3) Except as otherwise provided in this section, the department shall approve a state license application and issue a state license if:

(a) the applicant has submitted an application in compliance with the rules promulgated by the department, is in compliance with this act and the rules, and has paid the required fee;

(b) the municipality in which the proposed marihuana establishment will be located does not notify the department that the proposed marihuana establishment is not in compliance with an ordinance consistent with section 6 of this act and in effect at the time of application;

(c) *the property where the proposed marihuana establishment is to be located is not within an area zoned exclusively for residential use and is not within 1,000 feet of a pre-existing public or private school providing education in kindergarten or any of grades 1 through 12, unless a municipality adopts an ordinance that reduces this distance requirement*[.] [Emphasis added.]

The trial court distilled its analysis into three discrete questions: "[1] does the [o]rdinance's buffer zone directly conflict with any provision of the MRTMA; [2] does the MRTMA completely occupy the regulatory field of buffer zones/location; and [3] is the buffer zone unreasonably

-10-

impracticable, as defined in the MRTMA?" After citing MCL 333.27959(3) and (4), the trial court observed that although the MRTMA regulates the distance between a marihuana establishment and a school, it does not regulate the distance between marihuana establishments. Based on this observation, the trial court held—correctly—that the City's requirement of a 700-foot buffer zone between marihuana establishments does not directly conflict with the MRTMA. The trial court also correctly determined that the MRTMA does not entirely occupy the regulatory field of buffer zones, given that (1) MCL 333.27956(2)(b) expressly allows a municipality to adopt ordinances "that are not unreasonably impracticable and do not conflict with this act" and that "regulate the time, *place*, and manner of operation of marihuana establishments," and (2) MCL 333.27959(3)(c) expressly allows a local municipality to reduce the 1,000-foot distance requirement for a marihuana establishment and a school.

Lastly, the trial court correctly held that the requirement of a 700-foot buffer zone was not "unreasonably impracticable" within the meaning of MCL 333.27956(2). The MRTMA defines "unreasonably impracticable" as follows:

> "Unreasonably impracticable" means that the measures necessary to comply with the rules or ordinances adopted pursuant to this act subject licensees to unreasonable risk or require such a high investment of money, time, or any other resource or asset that a reasonably prudent businessperson would not operate the marihuana establishment. [MCL 333.27953(x).]

As the trial court noted, the mere requirement that a marihuana establishment be located at least 700 feet apart from another such establishment is not overly onerous, and there was no evidence that a 700-foot distance between marihuana establishments significantly limited potential locations for multiple establishments within the city. The court also correctly observed that the requirement would not otherwise subject potential licensees to unreasonable risks or require an inordinate investment of money, time, or other resources or assets that a reasonably prudent businessperson would decline to operate a marihuana establishment. Indeed, as the trial court noted, the fact that the City received eight applications for the two available licenses suggests that potential investors did not view the buffer-zone requirement as an impediment to operating a marihuana establishment. Accordingly, the trial court did not err by concluding that the City's adoption of a 700-foot buffer zone between marihuana establishments was not preempted by the MRTMA.

## IV. LICENSING SCORING RUBRIC

Plaintiff also argues that the scoring rubric in § 14-615 of the City's ordinance conflicts with the MRTMA. We disagree.

We review de novo whether a trial court properly interpreted a municipal ordinance or charter, including whether a state statute preempts a local ordinance. *DeRuiter*, 505 Mich at 139; *Youmans*, 336 Mich App at 211.

Section 14-615 of the City's ordinance lists various factors that are to be considered and scored when reviewing the applications of competing applicants. In relevant part, § 14-615 provides:

(f)    In its application assessment, evaluation, scoring, ranking, and deliberations related to licenses to operate a medical marihuana provisioning center, marihuana retailer, medical marihuana grower and marihuana grower, the city clerk, with the assistance of legal advice from the city attorney, shall assess, evaluate, score, and rank each application based upon the following factors:

* * *

(2) Whether the proposed medical marihuana provisioning center, marihuana retailer, medical marihuana grower or marihuana grower will be consistent with land use for the surrounding neighborhood and not have a detrimental effect on traffic patterns and resident safety.  The maximum number of scoring points in this category shall be five points.

(3)    Whether the applicant proposes tangible capital investment and significant physical improvements to real property by eliminating existing blight, deteriorated or vacant buildings which currently exist on the proposed location and/or by adding new construction as defined in MCL 211.34d.  The maximum number of scoring points in this category shall be 20 points.

* * *

(5)    Whether the applicant possesses sufficient resources to fund the applicants proposed marijuana facility plan and business plan pursuant to the application.  The maximum number of scoring points in this category shall be 15 points.

(6) Whether the applicant presents a proposed staffing plan, complete with description of duties, proposed wages and employee qualifications.  The maximum number of scoring points in this category shall be ten points.

* * *

(8)    Whether the applicant demonstrates significant improvement to real property by removing the presence of hazardous substances or environmental hazards, including, but not limited to, soil and groundwater contaminates, which may exist on the proposed location.  The maximum number of scoring points in this category shall be 20 points.

* * *

(g)  Overall scoring and ranking shall be conducted and applied by the city clerk with the assistance of legal advice from the city attorney on the basis of assigned points from zero points to 100 points with the lowest overall total score as zero points and the highest possible total score being 100 points.

Plaintiff argues that the scoring criteria in the City's ordinance, specifically Factors (2), (3), (5), (6), and (8), are invalid because they impose qualifications for licensure that conflict

-12-

generally with the MRTMA and "directly conflict" with the statutory mandate of MCL 333.27959(4), which provides:

> If a municipality limits the number of marihuana establishments that may be licensed in the municipality pursuant to section 6 of this act and that limit prevents the department from issuing a state license to all applicants who meet the requirements of subsection 3 of this section, *the municipality shall decide among competing applications by a competitive process intended to select applicants who are best suited to operate in compliance with this act within the municipality.* [Emphasis added.]

In *Yellow Tail Ventures, Inc v Berkley*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket Nos. 357654 & 358242); slip op at 7, the plaintiffs raised an argument similar to the argument that plaintiff raises in this appeal. The plaintiffs claimed that MCL 333.27959(4) precluded the city of Berkley from using scoring factors that emphasized community concerns, including green infrastructure, sustainability, aesthetics, and economic goals. The plaintiffs further contended that Berkley's scoring factors did not have any connection to whether an applicant was "best suited to operate in compliance with" the MRTMA. *Id.* This Court rejected the plaintiffs' argument that the MRTMA did not allow a municipality to consider factors related to local concerns given the language in MCL 333.27959(4) that allows a municipality to select an applicant "best suited to operate in compliance with this act *within the municipality.*" *Id.* This Court explained:

> The statute could have been drafted to omit this qualifying language, and the provision would have made grammatical sense. But, the statute was not written that alternative way, and the statute does include the qualifier "*within the municipality.*" We read this qualifier as permitting a municipality to craft criteria suited to its own local concerns, provided that the criteria conform to the other provisions of the MRTMA.

This Court held that it could not ignore the phrase "within the municipality" because courts must avoid construing a statute in a manner that would render any portion of it nugatory. *Id.* This Court concluded that "[t]he plain and ordinary reading of MCL 333.27959(4) authorizes a municipality to adopt a competitive process to select applicants that are best suited to operate *within the municipality,*" which "includes concerns specific to that community, including green infrastructure, sustainability, aesthetics, and economic goals." *Id.*

Additionally, this Court in *Yellow Tail* rejected the plaintiffs' argument that the city of Berkley's regulations exceeded its authority under MCL 333.27956, holding that the city of Berkley ordinance, as applied, did not "stray outside the cabin" of its authority under the statute. *Yellow Tail*, ___ Mich App at ___; slip op at 7. This Court recognized that MCL 333.27956 "expressly permit[s] a municipality to adopt an ordinance so long as it (1) is not unreasonably impracticable, (2) does not directly conflict with the MRTMA or promulgated rules, and (3) regulates the time, place, and manner of operation of a marihuana establishment." *Id.* at ___; slip op at 8. This Court explained:

-13-

The criteria used by a municipality to evaluate an application can certainly reflect and anticipate whether that proposed licensee will be willing and able to conform to the local "time, place, and manner" regulations enacted by that municipality. And, so long as those regulations do not impose unreasonably impracticable requirements or conflict with the MRTMA or promulgated rules, then the use of criteria that reflect those local concerns is permissible. [*Id*.]

This Court determined that nothing in the record suggested that any of the challenged criteria were "unreasonably impracticable," or conflicted with the MRTMA or any rule promulgated under the MRTMA. *Id.* Rather, this Court concluded that the challenged criteria "fit neatly within a reasonable understanding of the MRTMA's time, place, and manner" provision in MCL 333.27956(2)(b). *Yellow Tail*, ___ Mich App at ___; slip op at 8.

In this case, we similarly reject plaintiff's argument that Factors (2), (3), (5), (6), and (8) have no "relationship to the suitability of an applicant to act in compliance with the MRTMA." Factor (2) considers whether a marihuana establishment "will be consistent with land use for the surrounding neighborhood and not have a detrimental effect on traffic patterns and resident safety." Factor (3) considers whether the applicant "proposes tangible capital investment and significant physical improvements to real property by eliminating existing blight, deteriorated or vacant buildings which currently exist on the proposed location and/or by adding new construction as defined in MCL 211.34d." Factor (5) addresses whether "the applicant possesses sufficient resources to fund the applicant's proposed marijuana facility plan and business plan pursuant to the application." Factor (6) addresses "a proposed staffing plan, complete with description of duties, proposed wages and employee qualifications." Factor (8) considers "whether the applicant demonstrates significant improvement to real property by removing the presence of hazardous substances or environmental hazards, including, but not limited to, soil and groundwater contaminates, which may exist on the proposed location."

As this Court observed in *Yellow Tail*, ___ Mich App at ___; slip op at 8, MCL 333.27956 clearly allows a municipality to adopt an ordinance that regulates the time, place, and manner of a marihuana establishment, and allows the municipality to adopt scoring criteria that address local concerns, provided that they are not "unreasonably impractical" or conflict with the MRTMA. Although plaintiff argues that the challenged scoring factors do not bear a "relationship to the suitability of an applicant to act in compliance with the MRTMA," plaintiff does not contend that any of the scoring factors were unreasonably impracticable. And the record does not reflect that the requirements in the scoring factors are so onerous that they arise to a level of being "unreasonably impracticable" or otherwise conflict with the MRTMA. Rather, the requirements in the City's scoring criteria reflect unique and important local concerns specific to the community, and they "fit neatly within a reasonable understanding of the MRTMA's 'time, place, and manner' provision." *Yellow Tail*, ___ Mich App at ___; slip op at 8. Accordingly, we reject plaintiff's contention that the scoring factors are invalid because they conflict with or contravene the MRTMA.

## V. CONCLUSION

We conclude that the Utica City Council's adoption of its marihuana business ordinance was a valid exercise of its legislative authority. We further conclude that the trial court correctly

-14-

held that the doctrine of laches precludes plaintiff from challenging the validity of the ordinance on the ground that the proposed ordinance in the initiative petition was not submitted to the city council as presented. The trial court also properly rejected plaintiff's arguments that the 700-foot buffer requirement and the scoring factors used by the City to score competing applications either conflicted with or violated the MRTMA. Accordingly, we affirm the trial court's order denying plaintiff's motion for partial summary disposition and granting summary disposition in favor of the City and MK Group MI. In light of our decision, it is unnecessary to consider plaintiff's argument that if any portion of the City's marihuana business ordinance is found to be invalid, the entire ordinance must be stricken.

Affirmed.

/s/ Christopher M. Murray
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle